**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 09-39-DLB**

**GREGORY W. WILDEBOER**                                                      **PLAINTIFF**


**vs.**               **<u>MEMORANDUM OPINION AND ORDER</u>**


**SHEET METAL WORKERS'**
**NATIONAL PENSION FUND**                                              **DEFENDANT**

*     *     *     *     *     *     *

        Plaintiff Gregory Wildeboer commenced the instant action against the Sheet Metal

Workers' National Pension Fund pursuant to the Employee Retirement Income Security Act

of 1974, 29 U.S.C. §§ 1001-1461 (ERISA), seeking review of the Fund's decision to deny

Plaintiff early-retirement pension benefits based on his alleged engagement in disqualifying

employment.

        Before the Court are the parties' cross-motions for judgment on the administrative

record (Docs. #32,33), and Plaintiff's Motion for Leave to File Sur-Reply Memorandum

(Doc. #38).  Both motions have been fully briefed (Docs. #35, 36, 37, 39), and are ripe for

review.  For the reasons set forth below, because Defendant's determination that Plaintiff

was engaged in disqualifying employment under the terms of the Fund's Plan of Benefits

was not arbitrary and capricious, Defendant's Motion for Judgment on the Administrative

Record (Doc. #33) is **granted**, and Plaintiff's Motion to Reverse the Administrative Decision

(Doc. #32) is **denied**.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Gregory W. Wildeboer worked as a sheet metal worker and was a member of the Sheet Metal Workers International Association (SMWIA) Local 24 (formerly known as Local 141) from 1966 through 1986.  (Docs. #1, 32, 33).  Since ceasing to work as a full-time sheet metal worker, he has remained an inactive member of the union.  (Doc. #1, ¶ 7).  In 1986, Wildeboer founded Performance Marine, Inc. in Alexandria, Kentucky.  (Doc. #27, AP 009).  Performance Marine sells and services boats.  (*Id.*, AP 009-010).  As part of his business, Wildeboer rebuilds outboard engines and performs welding services including "weld[ing] aluminum when replacing broken skegs or cavitations plates [and] weld[ing] backing plate mounts on brake axels of boat trailers."  (Doc. #32).  Wildeboer admits that welding services constitute two percent of Performance Marine's business.  (Doc. # 27, AP 011).

In January 2008, Wildeboer applied for early retirement benefits from the Sheet Metal Worker's Nation Pension Fund ("Fund").  (*Id.*, AP 022).  The Fund denied his application, indicating that under the terms of the Fund's Plan of Benefits ("Plan") as defined in Section 5.01, Wildeboer was not retired as of the date of his application because he was engaged in disqualifying employment.  (*Id.*,  AP 016-018).  In the initial denial of benefits letter, the Fund explained that "Section 5.01 of the Plan states that a Participant is 'retired' within the meaning of the Plan, if he has ceased working in Covered Employment, as well as in any Disqualifying Employment, and such cessation of work is intended to be permanent." (*Id.*, AP 016).  Section 8.06(d) of the Plan defines Disqualifying Employment as:

2

(1)     When used in Section 8.06(a) and 8.06(b), the term "Disqualifying Employment" means:

    (A)     employment with any Contributing Employer;

    (B)     employment with any employer in the same or related business as any Contributing Employer;

    (C)     self-employment in the same or related business as a Contributing Employer;

    (D)     employment or self-employment in any business which is under the jurisdiction of the Union; or

    (E)     **employment in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer.**

(*Id.*, AP 018) (emphasis in original).  Section 1.35 of the Plan also defines Sheet Metal Industry as including

> any and all types of work covered by collective bargaining agreements to which the Union and/or any Local are a party; or under the trade jurisdiction of the Union, as that trade jurisdiction is described in the SMWIA's constitution; or in a related building trade; or any other work to which a sheet metal worker has been assigned, referred, or can perform because of his skills and training as a sheet metal worker.

(*Id.*).  In its initial letter denying benefits, the Fund denied Wildeboer's request for early retirement benefits on multiple grounds.  First, Performance Marine "performs minor repairs to engine rebuilds, including any and all welding jobs," which the Fund concluded was disqualifying employment since it is work similar to that done by contributing employers. (*Id.*, AP 016).  Second, Wildeboer's employment with Performance Marine was determined to be sheet metal work "under the trade jurisdiction of the Union as described in the SMWIA's Constitution under Article 1 Section 5 (a), (m) (x), and (z)." (*Id.*)  Section 5(x) "refers to all sheet metal work to build or maintain SHIPS and boats" and Section 5(z)

covers "any and all welding in connection with specified work, SHEET METAL WORK." (*Id.*, AP 010) (emphasis in original).

After receiving the Fund's denial letter, Wildeboer wrote the Fund a letter of official appeal.  (*Id.*, AP 009-011).  In his letter, Wildeboer described how his business went from selling and servicing boats to performing the repairs now in question.  (*Id.*, AP 009).  In order to save his clients time when fixing broken skegs or cavitation plates, Wildeboer discovered that if he purchased the replacement parts as well as a machine that could weld aluminum, he could do the repairs himself.  (*Id.*).  In his letter, Wildeboer explained the nature of his repairs:

> I **do not** perform "minor" repairs to engine rebuilds.  But have become one of a very limited specialized group that can take a blown up outboard powerhead and perform a complete professional rebuild and give the customer back a dependable engine, that they can rely on for years to come, at half the cost of the alternative.  Sometimes when a motor blows up a rod or piece of piston will cause a small crack or hole in the crank case, which yes we weld up to save the extreme cost of a new block.

(*Id.*, AP 010) (emphasis in original).  Wildeboer's contends on appeal that the Fund erred in relying on a website maintained by a third party to determine the type of work he performs at Performance Marine.  (*Id.*).[1]  Wildeboer argues that the website is inaccurate and misleading, and that the services he performs do not require him to use the training and skills of a sheet metal worker.  (*Id.*, AP 005).

The Appeals Committee ("Committee") of the Fund reviewed the administrative record and denied Wildeboer's appeal.  Based on the information from the internet search and Wildeboer's letter of appeal, the Committee determined that Performance Marine

---

[1] The website was allegedly part of a promotion done by a member of a local bass anglers association.  The club took all of the pictures and provided all of the descriptions contained on the website.  (Doc. #27, AP 010).

4

performs welding, which constitutes work within the Sheet Metal Industry and is disqualifying employment under the Plan. (*Id.*, AP 002). Based on these findings, the Appeals Committee concluded that Wildeboer was not retired under the Plan. (*Id.*). The Committee concluded that the welding services Wildeboer provides are in the same or related business as one or more contributing employers, and noted "that welding is in heavy demand within the Sheet Metal Industry, and among other things, the Sheet Metal Workers International Training Institute (ITI) has a dedicated training module for this work, as explained on the ITI's website." (*Id.*, AP 003). In addition, the Committee stated the work performed by Wildeboer was of a nature generally performed in the Sheet Metal Industry, but the work was not covered by a Collective Bargaining Agreement. (*Id.*).

After receiving the Committee's letter denying his appeal, Wildeboer filed the instant action on March 23, 2009. (Doc. #1). The Complaint alleges that the Fund's decision denying early retirement benefits was arbitrary and capricious. (*Id.*). Wildeboer is seeking unpaid past-due benefits, plus interest; an order indicating his entitlement to future benefits so long as he remains eligible; and attorney's fees and costs. (*Id.*).

## II.   ANALYSIS

### A.   Standard of Review

The district court reviews "an ERISA plan administrator's denial of benefits *de novo*, unless the plan gives the administrator discretionary authority to determine eligibility for benefits." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "When the plan gives the administrator discretionary authority, [the district court] appl[ies] the highly deferential arbitrary and capricious standard of review." *Id.* "Under this deferential standard, when it is possible to

5

offer a reasoned explanation, based on the evidence for a particular outcome, that outcome is not arbitrary and capricious." *Id.*; *see also Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 392 (6th Cir. 2009) ("Under this standard, we uphold the administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" (quoting *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552 (6th Cir. 2008))).[2] Ultimately, "[t]he administrator's decision must be 'rational in light of the plan's provisions.'" *Helfman*, 573 F.3d at 392. In this case, the parties agree the arbitrary and capricious standard of review applies. (Docs. # 32, 33).

### B.   A Jointly-Administered Multi-Employer Pension Plan Does Not Operate Under a Conflict of Interest

If "a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict of interest must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone Tire*, 489 U.S. at 115. The Supreme Court has concluded that the existence of a conflict of interest does not change the standard of review from deferential to *de novo* review. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (2008). "[C]onflicts are but one factor among many that a reviewing judge must take into account." *Id.* at 2351. "[T]he word 'factor' implies, namely that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one". *Id.*

---

[2] The issue of what constitutes substantial evidence under ERISA in the context of disqualifying employment has not been addressed by the Sixth Circuit Court of Appeals. Under ERISA in the context of termination of long-term disability benefits, the arbitrary capricious standard of review requires the district court "to review 'the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552 (6th Cir. 2008) (quoting *McDonald v. W.S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)). In the context of the Social Security Act, substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).

"[A] conflict of interest exists for ERISA purposes where the plan administrator evaluates and pays benefits claims, even when ... the administrator is an insurance company and not the beneficiary's employer." *Delisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440, 445 (6th Cir. 2009). The Sixth Circuit has found a conflict of interest to exist when a plan is administered and funded by a third-party, for-profit insurance company. *Id.* However, where a pension "[p]lan is a multi-employer benefit plan without profit motive, and individual trustees receive no personal financial benefit from approving or denying claims," no conflict of interest exists. *Klein v. Cent. States, Se. and Sw. Areas Health and Welfare Plan*, No. 09-3275, 2009 WL 2877933, at *3 (6th Cir. Sept. 10, 2009) (unpublished); *see also Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d 480, 481 (9th Cir. 1990) ("Because the Board of Trustees consists of both management and union employees, there is no conflict of interest to justify less deferential review.")

When reviewing a denial of ERISA benefits, the review should be based solely on the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998). However, the Sixth Circuit will allow the consideration of new "evidence [if it] is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Fendler v. CAN Group Life Assurance Co.*, No. 06-3245, 247 F. App'x. 754, 757, (6th Cir. 2007) (quoting *Wilkins*, 150 F.3d at 618).

In *Fendler*, the plaintiff was denied life insurance benefits under his deceased mother's employee benefit plan. *Id.* at 755. The claims administrator read the plan as precluding the plaintiff from receiving the insurance benefits. *Id.* The plaintiff filed an ERISA suit claiming wrongful denial of benefits. *Id.* at 756. The district court allowed the

7

plaintiff to engage in limited discovery, but because the discovery did not uncover any procedural deficiency, the court refused to supplement the administrative record. *Id.* 756-757. After the district court ruled in favor of the defendant on the administrative record, the plaintiff appealed. *Id.* at 757. Affirming the district court's denial of the plaintiff's request to supplement the administrative record, the Sixth Circuit indicated that the plaintiff did "not allege a lack of due process, administrator bias, or any other deficiency." *Id.* at 757-58. The court therefore rejected plaintiff's arguments that the administrative record was incomplete and that the defendant's control of the administrative record required the record to be supplemented. *Id.* 757-758.

In the instant case, Defendant asserts that the Plan is a jointly-administered multi-employer fund where benefits are paid from a pool of money funded by multiple employers and decisions are made by employer and union trustees. (Doc. #33). Although Wildeboer does not directly challenge the structure of the Fund, he indicates that the administrative record does not provide evidence supporting the Fund's claimed structure.[3] (Docs. # 35, 37). However, Wildeboer's motion cites Section 1.38 of the Plan, which defines that the term trustees as "the persons who are acting as Employer Trustees and Union Trustees." (Doc. # 32-2, at 4). Based on *Fendler*, the Court will supplement the administrative record with the above information since the evidence deals with an alleged administrator bias created by a conflict of interest. The supplemental evidence, specifically Section 1.38 of the Plan, indicates that the Plan is a jointly-administered multi-employer plan. Therefore, no conflict of interest exists.[4]

---

[3] The entire Plan is not part of the administrative record. The record only includes those portions of the Plan cited by the parties and the Appeals Committee.

[4] Even if the Court did consider the alleged conflict of interest, for the reasons stated herein, the Committee's decision was not unreasonable.

**C.    The Fund's Decision to Deny Benefits Was Not Arbitrary and Capricious.**

Defendant denied Wildeboer early retirement benefits because under the Plan he engaged in disqualifying employment.  According to the Fund, Wildeboer engaged in disqualifying employment under Sections 8.06(d)(1)(B), (C), and (E) of the Plan.  (Docs. #32, 33).  Under Section 8.06(d)(1)(B) and (C), Wildeboer engaged in disqualifying employment by being employed or self-employed "in the same or related business as any Contributing Employer."  (*Id.*).  In the alternative, under Section 8.06(d)(1)(E), Wildeboer engaged in disqualifying employment by being employed in the Sheet Metal Industry "that is not covered by a collective bargaining agreement between the Union and the employer." (*Id.*).  Wildeboer challenges each of these determinations.

**1.    The Administrative Record Contains Sufficient Evidence to Support a Finding That Wildeboer Was Employed in the Same or Related Business As Any Contributing Employer**

Wildeboer argues that the Fund's conclusion that he was employed "in the same of related business as a Contributing Employer" was not supported by substantial evidence and is therefore arbitrary and capricious.  (Doc. #32).  He focuses on three separate problems with the Fund's decision.  Each of these problems will be addressed below.

First, Wildeboer argues that during the appeal, he completely disavowed ownership or responsibility for the contents of the website the Fund relied upon to make its decision. (*Id.*)  The Fund used the website to demonstrate that the services provided by Performance Marine included welding and outboard motor repair.  (Doc. #27, AP 002).  However, even if the website's information was omitted from the decision-making process, Wildeboer's letter of appeal reflects that he performed welding services for his clients.  (*Id.*, AP 010;

9

Doc. #33).  It was these welding services the Fund concluded were similar to work done by contributing employers.  (*Id.*, AP 016).  Therefore, any alleged error in relying on the website was tempered by the fact that the necessary information–Wildeboer's performance of welding services–is in the administrative record from other sources.

Second, Wildeboer argues "that welding performed in the course and scope of his duties with Performance Marine was merely incidental to and in no way similar to the type of welding performed by a sheet metal worker." (Doc. #32).  Neither party cites to any authority for the proposition that incidental performance of a skill constitutes or does not constitute disqualifying employment.

Although the Court's research has failed to reveal any analogous Sixth Circuit authority, the Eighth Circuit Court of Appeals decision in *Eisenrich v. Minneapolis Retail Meat Cutters and Food Handlers Pension Plan*, 574 F.3d 644, 650 (8th Cir. 2009) is persuasive.   In *Eisenrich*, the plaintiff was former meat cutter whose pension plan included a provision that the retiree's benefits would be suspended if the retiree returned to work "in the same industry, in the same trade or craft, and the same geographic area covered by the plan."  *Id.* at 646.  After retirement, he began working as an independent distributor for Pepperidge Farm.  *Id.* at 647.  The plan administrators concluded that plaintiff was engaged in the same trade or craft as meat cutting and suspended benefits.  *Id.* at 648.  The district court disagreed, and granted plaintiff summary judgment.  In affirming, the Eighth Circuit concluded that plaintiff was not working in the same trade or craft, "because [the plaintiff] does not use *any* skills as an independent distributor that he used as a meat cutter."  *Id.* at 650 (emphasis added).

10

Although persuasive only, *Eisenrich* is helpful in adjudicating Wildeboer's case.  The Eighth Circuit focused on the fact that working as an independent distributor did not require using *any* skills that were required to work as a meat cutter.  In *Eisenrich*, they were two entirely different occupations, which was not the case for Wildeboer.  Although Wildeboer claims that his admitted use of welding skills was merely incidental, welding was admittedly one of the skills used in his previous occupation.  For that reason, there is no error warranting reversal on that basis.

Third, Wildeboer relies on the Fund's failure to identify contributing employers who perform work in the same or related business as Performance Marine to support his contention that the decision to deny him benefits was arbitrary and capricious.  (Doc. # 32).  However, Wildeboer cites only non-binding authority for the proposition that the Fund is required to identify specific contributing employers who perform the same work as Performance Marine.  *See Morton v. Sheet Metal Workers' Nat'l Pension Fund*, No. 1:08-cv-942, 2009 U.S. Dist. LEXIS 53107, at *1 (E.D. Va. June 23, 2009).

*Morton* contains facts similar to this case.  The plaintiff was a former steel worker who was receiving early retirement benefits.  *Id.* at 2, 7.  When plaintiff started working for Champion Environmental Services, Inc., a company providing asbestos abatement services, the Sheet Metal Workers' National Pension Fund suspended his retirement benefits because it found that plaintiff was engaged in disqualifying employment because 1) contributing employers performed the same abatement services provided by Champion; and 2) abatement services constituted work in the sheet metal industry under the Sheet Metal Worker's International Association Constitution.  *Id.* at 7-8.  Defendant disputes Wildeboer's interpretation of *Morton*'s holding and states that there is no authority that

11

stands for the proposition that the Fund must specifically name a contributing employer. The Court agrees.

Morton does not stand for the proposition that a pension fund must provide the specific name of a contributing employer that performs work in the same or related business or their decision to deny benefits will be arbitrary and capricious.  In Morton, the plaintiff questioned whether the contributing employer, Performance Abatement Services ("PAS"), referenced by the pension fund constituted a contributing employer as defined by the plan.  Id. at 18.  The District Court for the Eastern District of Virginia looked to the administrative record to determine that plaintiff's employer performed abatement services, that PAS performed lead and asbestos abatement services, that PAS made payments to the pension fund, and that making payments was strong circumstantial evidence that PAS was bound by a collective bargaining agreement that required contributions.  Id. at 19-20.  Although the pension fund specifically named a contributing employer, nowhere did the district court require such specificity.

The District Court for the Southern District of New York has held that an appeals committee decision was not arbitrary and capricious even though it did not name a specific contributing employer who performs work in the same or related business.  Petri v. Sheet Metal Workers' Nat'l Pension Fund, No. 07-6142, 2009 U.S. Dist. LEXIS 89306, at *12, 22-24 (S.D. N.Y. Sept. 28, 2009).  In Petri, the plaintiff had worked in the sheet metal industry, but subsequently started two companies which performed roofing, siding, and related residential contractor work.  Id. at 6.  Plaintiff began receiving early retirement benefits, but was selected for a random audit in 2006, which showed his income from his two companies.  Id. at 7-8.  Following the audit, his early retirement benefits were terminated

12

by the pension fund because was engaged in disqualifying employment. *Id.* at 8. In his appeal letter, plaintiff acknowledged that his company was in the "residential siding and roofing business," which included "slate and tile repair, shingle roofing and some remodeling and carpentry work." *Id.* at 9. In denying benefits, the appeals committee stated: "[a]fter careful review the Committee determined that the Fund has many Contributing Employers that work in the roofing industry and noted that such duties are performed by sheet metal workers, particularly in the roofing segment of the industry or in connection with subcontracting to roofing and insulting contractors." *Id.* at 12.

In upholding the appeals committee's decision, the district court noted that the Second Circuit Court of Appeals had held that "the decision to deny benefits may be overturned 'only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Id.* at 16 (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). In so doing, the district court observed that 1) one of the plaintiff's companies was itself a contributing employer; 2) plaintiff's work for a second company, which also performed residential roofing, siding, and alterations, constituted disqualifying employment; and 3) although the appeals committee did not provide a specific contributing employer who performed this type of work, "[t]he Sheet Metal Worker's Constitution clearly indicates that roofing is considered to be sheet metal work." *Id.* at 23.

In the absence of controlling Sixth Circuit authority, these authorities do not place a requirement on the Fund to specifically name contributing employers who perform work in the same or related business as Performance Marine to avoid its decision being deemed arbitrary and capricious. The administrative record in this case indicates that Wildeboer's employment includes performing welding services. (Doc. # 27. AP 010). The Fund, as it

13

did in *Petri*, concluded that the services rendered by Wildeboer – in this case welding – constituted services provided by contributing employers. (*Id.*, AP 003). As further evidence of the importance of welding in the sheet metal industry, the Fund stated that welding is in high demand and that "the Sheet Metal Workers International Training Institute (ITI) has a dedicated training module for this work, as explained on the ITI's website." (*Id.*).

Because the record evidence supports the Fund's reasonable decision that Wildeboer engaged in disqualifying employment as defined by Section 8.06(d)(1)(B) and (C) of the Plan, the decision to deny benefits was not arbitrary and capricious.

> 2.   **The Administrative Record Contains Sufficient Evidence to Support a Finding That Plaintiff Was Engaged in Employment in the "Sheet Metal Industry" That Was Not Covered By a Collective Bargaining Agreement Between the Union and the Employer**

Wildeboer next argues that the Fund's conclusion that he was employed in the "Sheet Metal Industry," and that such employment was not covered by a collective bargaining agreement between the Union and his employer was not supported by substantial evidence, making its denial of benefits arbitrary and capricious. (Doc. #32). In essence, he contends that the Fund's decision rested on conclusory allegations in that the Fund provided no specific evidence of how his employment with Performance Marine constituted work in the "Sheet Metal Industry" as required by *Morton*. Furthermore, Wildeboer alleges that by relying on the SMWIA constitution, the Fund relied on evidence not in the administrative record, rendering its decision arbitrary and capricious. (Doc. #32).

Substantial evidence does not require that specific employers or collective bargaining agreements be cited; however, "evidence that was not presented to the Appeals Committee and which is not included in the administrative record will not be considered in

determining whether the decision to suspend benefits was supported by substantial evidence." *Morton*, 2009 U.S. Dist. LEXIS 53107, at *15-18.   In *Morton*, an appeals committee held that Morton had engaged in disqualifying work by working in the Sheet Metal Industry for an employer not covered by a collective bargaining agreement with the Union.  *Id.* at 8.  The committee reached this decision by looking at the SMWIA constitution and concluding that performing asbestos abatement was work under the trade jurisdiction of the Union as defined by the constitution.  In addition, the committee found that Morton's employment "constituted work in a related building trade because asbestos abatement was also performed" by two companies "affiliated with the Building & Construction Trades Department of the AFL-CIO."  *Id.* at 16.  Finally, the committee held that the "SMWIA had a collective bargaining agreement targeted at asbestos."  *Id.* at 16-17.

In concluding that the committee's decision to deny benefits was arbitrary and capricious, the district court indicated that the evidence the committee relied upon was not in the administrative record.  *Id.*  The pension fund conceded that the SMWIA Constitution was not in the administrative record.  *Id.*  In addition, the district court found that the information about the two companies, as well as the collective bargaining agreement, were not in the record.  *Id.*  Because nothing relied upon by the committee was in the record, the district court held that the committee abused its discretion.  *Id.* at 17.

In this case, the Fund's determination that Wildeboer engaged in disqualifying employment under Section 8.06(d)(1)(E) is supported by substantial evidence and is not arbitrary and capricious.  Section 8.06(d)(1)(E) states that disqualifying employment is "employment in the Sheet Metal Industry that is not covered by a collective bargaining agreement between the Union and the employer."  (Doc. # 27, AP 018).  And, the Plan

15

defines the terms in question.  In particular Section 1.35 of the Plan defines the term "Sheet Metal Industry" to include:

> any and all types of work covered by collective bargaining agreements to which the Union and/or any Local are a party; or under the trade jurisdiction of the Union, as that trade jurisdiction is described in the SMWIA's constitution; or in a related building trade; or any other work to which a sheet metal worker has been assigned, referred, or can perform because of his skills and training as a sheet metal worker.

(*Id.*).  Wildeboer does not dispute the fact that the Union and his employer are not covered by a collective bargaining agreement.  However, he does dispute that the welding he performs constitutes work in the Sheet Metal Industry.  (Doc. # 32).

Wildeboer engaged in sheet metal work by performing work that was under the trade jurisdiction of the Union as described in the SMWIA's constitution, specifically by welding and repairing portions of boats.  Although the SMWIA constitution is not in the administrative record, Wildeboer included the text of four constitutional provisions in his letter of appeal, which is part of the administrative record.  (Doc. # 27, AP 009-011, 016).[5] The letter quotes Article I, Section 5(x) of the SMWIA Constitution, which "[r]efers to all sheet metal work to build or maintain SHIPS and boats."  (*Id.* at AP 010) (emphasis in original).  The administrative record indicates that Wildeboer repairs broken skegs and cavitation plates by welding, an action which constitutes repairing boats.  (*Id.* at AP 009). Furthermore, the record indicates that welding is in heavy demand in the sheet metal industry, specifically referencing the Sheet Metal Workers International Training Institute's welding training module.  (*Id.* at AP 003).  Taken collectively, the administrative record contains substantial evidence that the Plaintiff's welding activities constituted work under

---

[5] The constitution is also referenced in the Fund's initial denial letter.

the Union's trade jurisdiction.

Wildeboer also engaged in sheet metal work by engaging in work that he could perform because of his skills and training as a sheet metal worker. His challenge that this determination is conclusory fails to take into account reasonable inferences that can be drawn from the administrative record. First, as previously discussed, welding is in high demand in the sheet metal industry. Second, Wildeboer started in the sheet metal workers trade straight out of high school. (*Id.* at AP 009). Taking these facts together, the Committee could reasonably conclude that Wildeboer's welding skills were developed through his work in the sheet metal industry. Therefore, the Fund's conclusion that Wildeboer engaged in disqualifying employment under Section 8.06(d)(1)(E) of the Plan was not arbitrary and capricious.

### III.   CONCLUSION

Accordingly, for the reasons stated herein **IT IS ORDERED** as follows:

1.   Plaintiff's Motion For Leave to File Sur-Reply Memorandum (Doc. #38) is hereby **GRANTED**;

2.   Defendant's Motion for Judgment on the Administrative Record (Doc. #33) is hereby **GRANTED**;

3.   Plaintiff's Motion to Reverse the Administrative Decision (Doc. #32) is hereby **DENIED**;

4.   This matter is hereby **STRICKEN** from the docket of the Court; and

5.   A Judgment affirming the administrative decision will be entered contemporaneously herewith.

17

This 5th day of March, 2010.



Signed By:

*David L. Bunning*

United States District Judge

G:\DATA\Opinions\Covington\2-09-39-MOO.wpd